IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| RHONDA CARTWRIGHT WISER,  )<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)<br>CAROLYN W. COLVIN,  )<br>ACTING COMMISSIONER OF SOCIAL  )<br>SECURITY,  )<br>)<br>Defendant.  ) | Case No. 3:14-cv-0823<br>Judge Campbell / Knowles |

# REPORT AND RECOMMENDATION

## I. Introduction and Background

This is an overpayment case. The Social Security Administration ("SSA") is requesting that Plaintiff, a previously designated representative payee, repay the SSA $121,048.00 that was overpaid to beneficiary Daniel Cartwright, and $60,507.00 that was overpaid to Mr. Cartwright's daughter, Hannah Cartwright. Docket No. 8 at 1.

Daniel Cartwright applied for Title II Disability Insurance Benefits ("DIB") in 1994, was determined to be disabled, and began receiving DIB on approximately March 1, 1995. *See* Docket No. 6, attachment ("TR") at 22-24.[1] Plaintiff applied to be Mr. Cartwright's representative payee in February 1995, and also requested to be the payee for Mr. Cartwright's minor daughter, Hannah Cartwright. TR 25-26, 30-31. Mr. Cartwright and Plaintiff each signed SSA documents stating in part that they agreed to notify the SSA of any change in Mr.

---

[1] Daniel Cartwright is not a party to this lawsuit, nor was his case before the ALJ.

Cartwright's condition, employment status, or circumstances. TR 24, 25-26, 30-31. At the time, Mr. Cartwright and Plaintiff were married, but they were divorced in June 2004. TR 33.

In 2008, it came to the SSA's attention that Mr. Cartwright had earned income in 1997, 2001, 2002, 2003, and 2005. TR 34-35. The SSA determined that Mr. Cartwright and Plaintiff had been divorced for a few years, that Mr. Cartwright had self-employment income, that this income had not been reported to the SSA, and that benefits may have been overpaid. TR 36. The SSA ultimately determined, based on earnings in the SSA's earnings record system, that Mr. Cartwright was not entitled to benefits after April 2002, and the SSA ceased Mr. Cartwright's payments. TR 42-44.

In August 2008, the local Murfreesboro office of the SSA began sending letters to Mr. Cartwright and to Plaintiff requesting that they contact their office because the SSA had discovered that they had divorced and that there was evidence that Mr. Cartwright had earnings. TR 34-35, 36. Regarding Plaintiff specifically, they informed her of the proposed decision that there had been an overpayment and they instructed her to have Mr. Cartwright respond to certain inquiries. TR 37-40. In October 2008, the SSA sent Plaintiff a letter informing her of its decision that Mr. Cartwright's disability had ended and that he was not entitled to payments beginning April 2002. TR 42-44. Plaintiff forwarded the letters to Mr. Cartwright's attorney, who wrote the local SSA office providing information and raising questions about the cessation period. TR 45. The SSA reviewed the materials and sent Plaintiff a letter dated October 23, 2008 notifying her that it had reconsidered its previous decision and again decided that Mr. Cartwright's disability had ended and that he was not entitled to payments beginning April 2002. TR 46-48.

In December 2008, the SSA wrote Plaintiff a letter: (1) informing her of its determination that it had overpaid Mr. Cartwright $121,048.00; (2) explaining to her how that overpayment was calculated; (3) providing to her repayment information; and (4) providing to her appeal information. TR 53-60. In February 2009, Plaintiff's attorney filed a timely request for reconsideration (TR 61), while Plaintiff, alleging that the overpayment was not her fault and that she could not afford to pay the money back to the SSA, timely requested a redetermination of the overpayment and a waiver of the overpayment (TR 109-116). Plaintiff's request for waiver was denied on reconsideration. TR 65-67.

The local SSA office also notified Mr. Cartwright of their decision to uphold their overpayment claim. TR 62. On November 23, 2010, the SSA wrote Mr. Cartwright a letter notifying him that the SSA would not approve his request for a waiver, but would schedule a personal conference with him for December 15, 2010. TR 68. Mr. Cartwright and his attorney met with SSA representative Teresa Terrell for his personal conference, wherein Ms. Terrell interviewed Mr. Cartwright and determined that responsibility for overpayment should be directed to Plaintiff. TR 71.

Plaintiff again requested a waiver of the overpayment, which was denied in a March 29, 2011 letter from the SSA. TR 72-73. The SSA denied that request, but scheduled a personal conference with Plaintiff for April 12, 2011. *Id.* On April 12, 2011, Plaintiff, her attorney, and her friend Tom Reed, met with SSA representative Carolyn Poss for her personal conference, and Plaintiff was interviewed. TR 75-77. Plaintiff argued that she was not without fault but that the burden of repayment should be shared equally with Mr. Cartwright. *Id.* Ultimately, Ms. Poss determined that recovery of the overpayment should not be waived. TR 75. In her notes

regarding Plaintiff's personal conference, Ms. Poss stated in part:

> Although Mr. Cartwright was found "not liable" by the Chattanooga Office, I am not convinced that he was unaware of the receipt of these benefits, nor that there was not an agreement between the two parties. It is reasonable to believe that Mrs. Cartwright agreed to no child support in their divorce because she and Mr. Cartwright had an agreement about the use of the Social Security funds.
>
> . . .
>
> Mrs. Cartwright's waiver indicates her expenses do exceed her income; however, she has currently married and her new spouse's income is not listed on the waiver. Additionally, her initial waiver dated 1/28/09 indicates that she has an IRA valued at $180,000. Since she has assets that would allow repayment of most, if not all of the overpayment, defeat the purpose nor against equity and good conscience cannot be found [*sic*].

TR 75.

Ms. Poss determined that waiver was not warranted, explaining:

> Mr. Cartwright purchased farm property in 2000 in order to commercially develop the property. At that time, he was still married to Rhonda Cartwright (his payee). In Mrs. Cartwright's statement, she indicated that she knew of the purchase and was hoping he would be able to make a go of the venture and earn money to help support the family.
>
> Neither Mr. Cartwright, nor his payee reported that he had started working as a self-employed real estate developer. Mr. Cartwright's taxes he filed indicate no profit for 2000, 2001, 2004, and 2006. Tax returns for 2003 and 2005 indicated a profit. We do not have full copies of these tax returns, only the Schedule "C".
>
> Schedule C for 2000 thru 2005 indicate the address for Mr. Cartwright's business is in Murfreesboro, TN. Mr. Cartwright's address is the same address listed as Mrs. Cartwright's. The fact that the address [*sic*] are the same might indicate that Mr. and Mrs. Cartwright were living in the same house or at least had contact with each other. The assumption for taxable year 2003 is that the

4

tax return was filed as "Married, filing Jointly", since the addresses were the same and Mr. and Mrs. Cartwright were not yet divorced. It would be necessary to see the entire tax returns for the years 2000 through 2006 in order to determine how the returns were filed (e.g. Married filing jointly).

In addition, in April 2008, Mrs. Cartwright completed and signed over penalty or purjury [*sic*] an SSA 623-OCR stating that she had spent Mr. Cartwright's entire benefit of $19,273, paid between March 1, 2007 and March 31, 2008 for Mr. Cartwright's food and housing.

In her statement at the personal conference, Mrs. Cartwright and her attorney stated that they felt the liability of the overpayment should be joint and several between Mrs. Cartwright and Mr. Cartwright. Mrs. Cartwright also agreed to repay one-half of the overpayment; but only if equal liability for repayment of the overpayment could be assessed.

Although I believe, Mr. Cartwright was probably as much at fault and liable for the overpayment as Mrs. Cartwright, I believe he did prosper from the use of the overpayment funds (e.g. funds were used to support his children in lieu of child support), per GN02205.007 regarding the "Joint and Several Liability - Overpayment Recovery Title II" issue, liability would fall solely on Mrs. Cartwright for both Daniel K Cartwright's and Hannah D Cartwright's overpayment.

In making this determination, the following rationale was used:

POMS GN 02205.007B states that if representative payment is involved, the representative payee is solely liable for repayment if the incorrect benefits were "not" used for the support and maintenance of the beneficiary. POMS GN 0205.007B and E - Exhibit do not allow for any exception to liability if the Social Security monies were not used for the beneficiary.

It is irrelevant if there was an agreement between the beneficiary and the payee for the payee to use the money for the support of their children. Mrs. Cartwright either knew or should have known that Mr. Cartwright's Social Security checks were to be used solely for Mr. Cartwright's food, shelter, and other basic needs.

5

TR 76-77.

After her personal conference and Ms. Poss' report thereon, the SSA sent letters to Plaintiff explaining the denial of her requests for waiver for the overpayments regarding Mr. Cartwright and Hannah Cartwright. TR 78-79, 80-83. Plaintiff subsequently timely filed a written request for a hearing before an Administrative Law Judge ("ALJ"). TR 87-88.

In January 2012, Plaintiff's counsel wrote to Chief ALJ Clair Strong, requesting that a subpoena be issued to Mr. Cartwright. TR 132-133. In April 2012, having received no response to that request, Plaintiff's counsel renewed the request to have a subpoena be issued to Mr. Cartwright; that request was denied. TR 134.

Plaintiff's hearing took place on April 26, 2012, before ALJ Scott Shimer. TR 383-406. At the hearing, the ALJ was reminded that Plaintiff had requested that a subpoena be issued for Mr. Cartwright to appear at the hearing. *Id.* Believing that the issues before him were: (1) the state of mind of Plaintiff (not Mr. Cartwright); (2) whether Plaintiff as the representative payee was at fault; and (3) whether the amount overpaid should be repaid to the SSA, the ALJ stated that he did not believe that Mr. Cartwright's presence and testimony were relevant or that he had the authority to make a determination as to fault. *Id.* Plaintiff was the only person to testify, and she was questioned by both the ALJ and her attorney. *Id.*

On May 9, 2012, the ALJ issued a decision which ultimately found Plaintiff wholly at fault and responsible for the full overpayment pursuant to Section 204(a)(1)(A) of the Act. TR 11-15. Specifically, the ALJ made the following findings of fact and conclusions of law:

>    1. The claimant, as representative payee, was found to be liable for overpayments of benefits totaling $181,555.00, occurring during the period of April 1, 2002, through

6

>                    September 30, 2007 (20 CFR 404.504.).
>
> 2.   The claimant was not "without fault" in causing the
>      overpayment (20 CFR 404.506(a), 404.507, and 404.510a).
>
> 3.   Recovery of the overpayment is not waived, and the
>      claimant is liable for repayment of $181,555.00 (20 CFR
>      404.506).

TR 13-15.

Plaintiff timely filed a request for review of the hearing decision, but on January 23, 2014, the Appeals Council issued a letter declining to review the case (TR 4-7), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

Plaintiff asks this Court to remand this action to the administrative hearing level so that she may have another hearing which includes testimony from Daniel Cartwright and so that a "determination as to fault and joint and several liability" can be reached. Docket No. 8 at 2. For the reasons discussed below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record (Docket No. 8) be DENIED, and that the decision of the Commissioner be AFFIRMED.

## II. Legal Standard

The Court must affirm the Commissioner's determination regarding overpayment of disability benefits unless the SSA failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence. 42 U.S.C. § 405(g); *Salamalekis v. Commissioner*, 221 F.3d 828, 829-30 (6th Cir. 2000). "Substantial evidence is more than a scintilla of evidence but

less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of HHS*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record as a whole. *Young v. Secretary of HHS*, 925 F.2d 146 (6th Cir. 1990).

The scope of review is limited to an examination of the record only; this Court does not make credibility determinations or weigh the evidence. *Brainard v. Secretary of HHS*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which could have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of HHS*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

As noted, the present case involves an overpayment of benefits. Under the SSA, "[w]henever the Commissioner of Social Security finds that more or less than the correct amount of payment has been made under this subchapter, proper adjustment or recovery shall be made, under regulations prescribed by the Commissioner of Social Security." 42 U.S.C. § 404(a)(1). An exception for the repayment of overpayments exists under 42 U.S.C. § 404(b), which provides in pertinent part:

> In any case in which more than the correct amount of payment has been made, there shall be no adjustment of payments to, or recovery by the United States from, any person who is without fault if such an adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience.

42 U.S.C. § 404(b). *See also*, *Valley v. Commissioner*, 427 F.3d 388, 391 (6th Cir. 2005) ("The

8

Social Security Act mandates repayment of overpayments except where an individual 'is without fault' and 'such adjustment or recovery would defeat the purpose of [Title II of the Social Security Act] or would be against equity and good conscience.'")(*quoting* 42 U.S.C. § 404(b)).

In cases involving the recovery of overpayments, the plaintiff has the burden of establishing the "negative prerequisite" (*i.e.* that she was without fault) before the overpayment can be waived. *Watson v. Sullivan*, 940 F.2d 168, 171 (6th Cir. 1991). "The question of fault is one of fact and as such is subject to the substantial evidence standard of review." *Doan v. Secretary of HHS*, No. 86-5956, 1987 WL 36143 at *1 (6th Cir. July 7, 1987), *citing Morgan v. Finch*, 423 F.2d 551 (6th Cir. 1970). "Fault" can include such things as, "(a) An incorrect statement made by the individual which he knew or should have known to be incorrect; (b) Failure to furnish information which he knew or should have known to be material; or (c) With respect to the overpaid individual only, acceptance of a payment which he either knew or could have been expected to know was incorrect." 20 C.F.R. § 404.507 (2013). An ALJ's finding of "fault" in the context of an overpayment does not imply a finding of bad faith, but can be the result of an honest mistake. *Morgan*, 423 F.2d at 553.

Whether or not the claimant is without fault is a threshold issue. If there is substantial evidence to support a finding that the plaintiff is "not without fault," then the court does not need to determine whether recovery would be against equity and good conscience or would defeat the purposes of the Act. *Id.* If the plaintiff has established that she is without fault, the plaintiff must then demonstrate that: (1) the recovery of the overpayment would defeat the purposes of Title II [42 U.S.C. §§ 401-403]; or, (2) that recovery of the overpayment would be against equity and good conscience. *Watson*, 940 F.2d at 171; *Pliley v. Sullivan*, 892 F.2d 35, 39 (6th Cir. 1989).

9

"Defeating the purpose of Title II means 'depriving a person of income required for ordinary and necessary living expenses.'" 20 C.F.R. § 404.508(a); *Valley*, 427 F.3d at 391. Recovery of an overpayment "will defeat the purposes of Title II in (but is not limited to) situations where the person from whom recovery is sought needs substantially all of his current income (including social security monthly benefits) to meet current ordinary and necessary living expenses." 20 C.F.R. § 404.508(b). "In making this determination, the Administration may look to the individual's financial resources in addition to her or his income." *Valley*, 427 F.3d at 391, *citing* 20 C.F.R. § 404.508(a).

"Recovery of an overpayment is against equity and good conscience where the individual 'changed his or her position for the worse . . . or relinquished a valuable right . . . because of reliance upon a notice that a payment would be made or because of the overpayment itself. . . .'" *Id.* at 392, *quoting* 20 C.F.R. § 404.509(a)(1). In addition, a claimant may demonstrate that recovery of an overpayment is against equity and good conscience where the individual "accepts such overpayment because of reliance on erroneous information from an official source within the Social Security Administration . . . with respect to the interpretation of a pertinent provision of the Social Security Act or regulations pertaining thereto. . . .'" *Id*. at 392-93, *quoting* 20 C.F.R. §§ 404.510a, 404.512. The claimant's individual financial circumstances, however, "are not material to a finding of against equity and good conscience." *Id.* at 393, *quoting* 20 C.F.R. § 404.509(b).

### III. Analysis

Plaintiff has raised two arguments on appeal. First, that the ALJ erred by not allowing her to subpoena Daniel Cartwright to her hearing "thus depriving her of her due process rights";

and second, that the ALJ's "ruling was not supported by substantial evidence." Docket No. 8 at 2. Although not enumerated as issues in her statement of errors, Plaintiff also states:

> The question for the court is whether [Plaintiff] was "without fault" as defined in 20 CFR 404.507 and if so whether recovery of the overpayment would (1) defeat the purpose of Title II of the Act as defined in 20 CFR 404.508 or (2) be against equity and good conscience as defined in 20 CFR 404.509. Additionally, whether Mr. Cartwright was "without fault" such that the payee and beneficiary should be held jointly and severally liable for the overpayment or alternatively that Mr. Cartwright should be held responsible for the full overpayment.

*Id.* at 1.

### A. Subpoena

Plaintiff's first contention is that the ALJ's denial of her request to issue a subpoena to Mr. Cartwright deprived her of her due process rights of confrontation and cross-examination. Docket No. 8 at 6. Plaintiff asserts that Mr. Cartwright lied in his personal conference, resulting in a determination that he was not at fault for the overpayment, and argues that her attorney should have been permitted to question Mr. Cartwight about what he knew or did not know and about his testimony during his personal conference because the ALJ may have found Mr. Cartwright and Plaintiff jointly and severally liable or reached a different decision on the issue of Plaintiff's fault. *Id.* at 3, 5-7.

As initial matter, Plaintiff has cited no binding authority for the proposition that an ALJ in a Social Security action *must* subpoena a person to testify. To the contrary, Plaintiff does not have an absolute right to compel a witness to appear or testify in a Social Security action (*see, e.g, Flatford v. Chater*, 93 F.3d 1296, 1305-07 (6th Cir. 1996)); rather, discretion to do so lies with the ALJ, who *may* issue a subpoena when he feels it is "necessary for the full presentation of a case"

(20 C.F.R. § 404.950(d) (emphasis added)).

In the instant action, the ALJ explained that Mr. Cartwight's testimony was not necessary because it was not relevant, as: (1) whether Mr. Cartwright was at fault was not an issue before him (since Mr. Cartwright was not a party to the case); (2) the issue before him was *Plaintiff's* state of mind; (3) he did not have "the authority to split it up and say 50/50"; (4) Mr. Cartwright's potential liability is separate and distinct from Plaintiff's potential liability; and (5) only Plaintiff's potential liability was before him (again, because Mr. Cartwright was not a party to the case). TR 384-385, 403-404.

Although Plaintiff seeks remand for a new hearing where Mr. Cartwright would be subpoenaed to testify and where the ALJ would make a determination regarding the issue of joint and several liability, Plaintiff cites no authority that would allow the ALJ to impose liability on Mr. Cartwright, as a non-party to this action, and no such Sixth Circuit or Supreme Court authority so permits. Plaintiff's contention that, "Had the judge heard the testimony of Daniel Cartwright, the judge could have found joint and several liability or individual liability" (Docket No. 8 at 6) is simply incorrect. Plaintiff is the only Plaintiff in this action, and therefore the only person for whom the ALJ has the power to determine fault or impose liability.

Because the issue before him was solely whether Plaintiff was at "fault" as that relates to the overpayment, and because, as will be discussed in greater detail below, the record contained substantial evidence on this point allowing the ALJ to reach a "fault" determination without subpoenaing Mr. Cartwright, the ALJ's denial of Plaintiff's subpoena request does not constitute grounds for remand in the case at bar; Plaintiff's contention on this point fails.

### B. *Substantial Evidence and the ALJ's "Fault" Determination*

Plaintiff argues that, by not subpoenaing Mr. Cartwright to testify, the ALJ did not consider all available evidence, and therefore, the ALJ's "fault" determination was not supported by substantial evidence. Docket No. 8 at 6-7. As noted above, Plaintiff contends that, "Had the judge heard the testimony of Daniel Cartwright, the judge could have found joint and several liability or individual liability." *Id.* at 6. Plaintiff also contends that, "Had Mr. Cartwright been present at the hearing, [Plaintiff] would have expected that he would have testified that the benefit payments were exclusively being used for the minor children," and "This sort of evidence would have lead to a different conclusion" by the ALJ. *Id.* at 7.

As discussed above, Mr. Cartwright is not a party to this lawsuit, nor was his case before the ALJ. Accordingly, the ALJ simply could not have found that Mr. Cartwright was jointly and severally liable or individually liable. As to Plaintiff's contention that Mr. Cartwright would have testified that she used his benefits to care for their minor children, what she used the money for was not relevant since the determination had already been made (and was not being challenged) that Mr. Cartwright's disability ceased in 2002 and that benefits beyond April 2002 should not have been paid in the first place. Plaintiff's arguments on this point fail.

Turning to the ALJ's "fault" determination and supporting evidence therefor, the ALJ explained in relevant part as follows:

> The claimant, Ms. Cartwright Wiser, has acknowledged that she was not "without fault" in causing the overpayment. Exhibit 44.
>
> . . . Ms. Cartwright Wiser . . . is an intelligent, educated woman. She was able to care for and raise her children.
>
> When Ms. Cartwright Wiser applied to be a representative payee,

13

she was informed that she was to notify the Administration if she could no longer act as the representative payee. She agreed to use the disability benefits for Mr. Cartwright's current needs or to save the benefits for his future needs. As the representative payee for Mr. Cartwright and for Hannah Cartwright, it was explained that she could be held personally liable to repay any misused benefits or if she was at fault in causing an overpayment. She agreed to abide by the rules and responsibilities, and signed the applications to be the representative payee for Mr. Cartwright and Hannah Cartwright. Exhibits 2-4.

When Ms. Cartwright Wiser applied to be the representative payee for Mr. Cartwright, she was informed that she would be responsible for notifying the Administration if Mr. Cartwright left her custody or changed his living arrangement or if she was no longer responsible for his care and welfare. Both she and Mr. Cartwright have indicated that he began living in Sequatchie County, Tennessee, instead of Murfreesboro, Tennessee, in 2000, after buying property in the county to develop. Ms. Cartwright Wiser failed to notify the Administration that he had left her custody and changed his living arrangement. Thus, she failed to furnish information which she knew or should have known was material.

The evidence establishes that Ms. Cartwright Wiser did not report that Mr. Cartwright was working and was no longer entitled to disability benefits. Ms. Cartwright Wiser has alleged that she was unaware that Mr. Cartwright was no longer disabled, that he was earning income from the development property, or that he was not entitled to the ongoing disability benefits received. Exhibits 18 and 33. She testified that he was able to obtain a driver's license in 1997 (Exhibit 44); demonstrating a certain level of competence. She has acknowledged that she knew he was buying farm property in 2000, and that she was hoping he would be able to earn money to support the family. Exhibit 26. She testified that she did not think that he really had the mental ability to make money on the property. She said that he always claimed that he was broke. On July 23, 2001, she signed a deed of trust that involved a promissory note in the amount of $111,100 (Exhibit 41, page 91); showing the large sums of money that were involved in the property transactions. She testified that she gave him her power of attorney when he was trying to develop the farmland and sell parcels. At the hearing, she claimed that she had no idea of the earnings resulting from such sales, and thought they were in debt. She claimed, unconvincingly,

14

> that she does not recall seeing the large amount of gross profits
> listed on their tax returns, even though she signed the returns. The
> evidence documents that she personally co-signed some of the
> deeds of trust in August 2003, October 2004, and March 2007, as
> the property was divided and sold (i.e. Exhibit 41, pages 5, 10, 45,
> and 77). In the couple's divorce papers, Mr. Cartwright was listed
> as self-employed (Exhibit 43); giving Ms. Cartwright Wiser notice
> that he was still working. As of June 2004, she was listed as co-
> owner with Mr. Cartwright of 150 acres of land, which was to be
> sold and the profits split after $500,000 of indebtedness on the land
> was satisfied. Exhibit 43. Such evidence supports a finding that
> Ms. Cartwright Wiser failed to furnish information that she knew or
> should have known to be material.
>
> When Ms. Cartwright Wiser applied to be a representative payee,
> she agreed to use Mr. Cartwright's disability benefits for his current
> needs or to save the benefits for his future needs. Exhibit 2. She
> testified that she understood that, as representative payee, she was to
> use Mr. Cartwright's disability payments for his benefit. She has
> reported that, after their divorce in June 2004, she used his disability
> benefits for his children's needs. Exhibit 33. When she misused the
> funds, she rendered herself potentially liable for repayment of the
> benefits.

TR 14-15.

As can be seen, the ALJ discussed Plaintiff's hearing testimony and the evidence of record, and explained his rationale for determining that Plaintiff was "not 'without fault'" in causing the overpayment. *Id.* Interestingly, other than denying the subpoena request for Mr. Cartwright and not soliciting testimony therefrom, Plaintiff has not contended that the ALJ either failed to consider, or erroneously considered, the evidence of record, nor has Plaintiff contested the fact that she acknowledged that she was "not 'without fault'" in causing the overpayment.

The ALJ properly considered the evidence of record, reached a reasoned decision that was supported by substantial evidence, explained the rationale for his decision, and properly determined that Plaintiff was "not 'without fault'" in causing the overpayment. As discussed

15

above, because "fault" is a threshold issue, the ALJ in the instant action did not need to proceed and determine whether recovery of the overpayment would defeat the purpose of Title II of the Act as defined in 20 C.F.R. § 404.507, or would be against equity and good conscience as defined in 20 C.F.R. § 404.509. As also discussed above, because Mr. Cartwright is not a party to this action, nor was his case before the ALJ, the ALJ cannot make Plaintiff's requested "fault" determination regarding Mr. Cartwright, hold him jointly and severally liable for the overpayment, or find him solely responsible for the full overpayment. Remand can neither provide Plaintiff with the relief she seeks, nor is it warranted. Plaintiff's arguments fail.

### IV. Conclusion

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record (Docket No. 8) be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
E. CLIFTON KNOWLES
United States Magistrate Judge